# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-431** |
| **EDWARD STUART** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Edward Stuart stands before this Court for sentencing for his conviction for his distribution of dozens of images and videos of child pornography to other child sexual predators using numerous platforms, and his collection of thousands of images and video of child pornography on his electronic devices. His crimes are clearly egregious, resulting in a calculated Guideline range of 151 to 188 months' imprisonment. For the reasons outlined below, the Government requests that the Court impose the recommended term of incarceration, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the '3553(a) factors. . . . [A] rote statement of the 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The Government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.    <u>PROCEDURAL BACKGROUND</u>

The defendant was charged by a federal Grand Jury on December 5, 2024 in a six-count indictment with distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count One), receipt of child pornography, in violation of 18 U.S.C. § 2252(s)(2) (Count Two), attempted enticement of a minor to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count Three), attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251(a) (Count Four), access with intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Five), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Six). On December 2, 2025, the defendant

appeared before this Court and entered pleas of guilty to Counts One and Six of the indictment pursuant to a written guilty plea agreement.

## II.    FACTUAL BACKGROUND[1]

This matter came to the attention of law enforcement after dozens of CyberTips were reported to NCMEC alerting to the distribution and transportation of child pornography. The analysis of all of the information associated with each of the Cybertips was cumbersome but ultimately connected defendant Edward Stuart to the distribution and upload of child pornography over the last three years using multiple online accounts and various websites and apps. In summary (and explained in detail below) the evidence revealed:

- Many of the email accounts associated with the Cybertips were titled in variations of Edward Stuart's name;

- Subscriber information obtained from ESPs for the IP addresses associated with the suspect accounts revealed the internet service was subscribed to by members of Edward Stuart's residence;

- A search warrant executed on Edward Stuart's home resulted in the seizure of his devices and the recovery of an enormous collection of child pornography, including some of the same images and video from the various Cybertips;

- All devices belonging to the other residents of the home were inspected and found NOT to contain any child pornography or any connection to the suspect online accounts or Cybertips; and

- Edward Stuart confessed to law enforcement in an audiotaped statement that he used the various accounts to engage with other child sex offenders and to distribute, receive, and possess child pornography.

---

[1] The facts described here are the same as contained in the Government's Guilty Plea Memorandum. The defendant stipulated to these facts during the hearing at which he entered his guilty plea.

## A. __Google CyberTips__

Between September 28, 2021, and April 11, 2022, Google filed 20 CyberTips and provided limited subscriber information associated with each account, to include the names, dates of birth, and email addresses. Each of the 20 Cybertips reported the same subscriber information:

      a.  Name: Edward Stuart
      b.  Date of Birth: [omitted – but confirmed to be defendant's true date of birth]
      c.  Email Address: stuartedward748@gmail.com (Verified)
      d.  IP Address: 2601:42:802:b3f0:5494:c3fe:4f42:96f8 on 09-27-2021 at 02:18:26 UTC (Login)

On April 12, 2024, federal search warrant number 24-649-M was signed by United States Magistrate Judge Craig M. Straw to allow inspection of the data pertaining to CyberTips, as the files underlying 19 of the 20 CyberTips had not been viewed by any personnel at Google and a search warrant was required to authorize their viewing. Subsequent review by the agent confirmed more than 120 child pornography files associated with each of the reported CyberTips. Almost all involved the sexual abuse of prepubescent children, including rape, oral rape, digital penetration of the child's vagina and anus, and lascivious exhibition of their genitals.

## B. __Kik Cybertips__

Between October 25, 2021, and June 21, 2024, Kik Messenger ("Kik") filed seven Cybertips, identifying eight different email accounts that were all ultimately linked to the defendant. Kik also provided the IP addresses associated with the accounts, the dates of the uploads to the suspect user's Kik account, and the images and videos that prompted the Cybertips. Agents confirmed that each account contained child pornography, that is, images depicting the same type of child sexual abuse as contained in the Google accounts above. Agents also obtained content by way of search warrants for the Kik accounts, which confirmed additional child pornography

images and video, and which also contained images linking the defendant to the accounts, namely three images of Edward Stuart's face.

### C. **Dropbox Cybertips**

Between September 10, 2021, and March 4, 2024, Dropbox, Inc. ("Dropbox") filed four Cybertips, identifying four Google accounts associated with the upload of child pornography into the user's Dropbox account. Dropbox also provided the IP addresses associated with the suspect accounts, the dates of the uploads, and the child pornography images and videos. Agents confirmed that they contained child pornography, consistent with all of the other Cybertips.

### D. **Other Cybertips**

On September 24, 2022, an individual submitted Cybertip 135499833 reporting her encounter with a user on Grindr by the name of "ANDRE" and phone number (267) 232-8465. In the report, she stated, "The individual claims he's molesting his younger sister and is offering to pay me to drive there." NCMEC performed a search of all Cybertips associated with phone number 267-232-8465 and located Cybertips 129118425 and 154411148:

- Cybertip 129118425 – Reported by Meta Platforms, Inc. ("Facebook") on 7/21/22. The report advised that a user uploaded suspected child pornography into his or her account and provided subscriber information for the reported user:
  - Name: EDWARD STUART
  - DOB: [omitted – but confirmed to be defendant's true date of birth]
  - Email address ANDRESP2155@GMAIL.COM
  - Username: EDWARD.STUART.7359
  - Cell: 267-232-8465
  - IP address 69.139.81.82 (7/11/22) - This is the same IP address used in the Kik Cybertips noted above.

- Cybertip 154411148 – Reported by WhatsApp LLC ("WhatsApp") on 2/2/23, advising that a user sent an "inappropriate" message with the "incident type" categorized as "Child Pornography (possession, manufacture, and distribution)." WhatsApp is a social application in which users can message each other and send images and videos. The mobile number associated to the reported user was 267-232-8465. The message, "Sex With Young Girls," was

reported for offering or seeking Child Sexual Abuse Material within the application.

As noted above, FBI agents linked defendant Edward Stuart to the numerous online accounts through IP addresses connected to the child exploitation criminal activity and subscriber records from ESPs, subscriber records for his various online accounts, content from his online accounts that was obtained via search warrant by local law enforcement, records checks that also included PennDOT records, and surveillance by FBI agents. Based on this investigation a search warrant was obtained for Edward Stuart's residence at 2434 Reese Street in Philadelphia (Mag. No. 24-1292-M), which was executed on August 13, 2024. The defendant was home at the time of the execution of the search warrant and agreed to speak with law enforcement. Though he was not in custody, agents also administered Miranda warnings from a pre-printed form, which the defendant read, acknowledged, waived, and evidenced with his signature. His interview was audiotaped.

The defendant admitted that the Motorola phone seized from his person belonged to and was used by him and was protected with both a passcode and his fingerprint. He admitted to establishing and using some of the suspect email accounts and also admitted that the phone number associated with the suspect accounts was his (267-232-8465). Stuart admitted to seeking out and receiving child pornography, and then redistributing it to others online, but claimed he did so only so that he could then blackmail the other users for money to support his drug habit. He claimed not to remember any specific images he had received, explaining that he was usually "high as a kite" when he engaged online on either heroin or fentanyl. Stuart claimed that he did not store or save any of the child pornography, and that he was not sexually attracted to children.

The defendant denied owning any other cell phones or electronic devices. However, agents found a One Plus cell phone on the sofa, which is where he lived/slept (he identified this area as his living space as did his family members). This device contained the bulk of the child pornography evidence, as well as evidence that One Plus phone was used by and belonged to the defendant. The forensic analysis revealed the following evidence:

A. **Maxwest Nitro 8 Tablet, IMEI 350513275849279**

- **236 cached files of child pornography** (235 images and 1 video), with dates between December 30, 2023, and July 31, 2024. At least 10 Cybertips reported these same images of child pornography. Cached images dated April 6, 2024, were found that depict a clothed minor girl (approximately 5 to 7 years old) engaging in oral sex on a nude, adult male's penis. These images were taken from a video that was reported by Kik as being distributed over Kik to another Kik user on October 18, 2022 by the JOHMPHILA123 account (which the defendant admitted to agents was his Kik account) using IP 69.139.81.82 (which resolved to the defendant's residence). **(Count One – Distribution of child pornography)**

- Telegram chats in which STUART would send and receive child pornography, including one chat where, at STUART's request, a user sent a video depicting an adult male forcefully holding a prepubescent minor girl's head to his penis while she performed oral sex and cried. The girl appears to be approximately four to five years of age. (received by STUART on or about April 12, 2024)

- **12 videos (equivalent to hundreds of images) and 3 images of child pornography** with download dates between March 26 and August 9, 2024. The files primarily depict minor girls being vaginally or orally raped, engaged in masturbation, or lasciviously displaying their genitals. **(Count Six – Possession of Child Pornography).** The files were found in multiple locations on the tablet, including the Downloads folder, the Telegram application, and a Kik folder within the Photos application.

- Many of the same email accounts that were found on the One Plus Phone (some of which were titled in variations of Stuart's true name) were also found on this device. As noted above, these same email accounts were linked to the Cybertips and child pornography.

- User attribution linking the defendant to this device, including:
  - Photos of his PA Driver's License
  - Photos of Stuart holding his PA Driver's License

- o Social Security card
- o Credit cards
- o Photos of the defendant holding his credit card
- o Autofill information stored on the phone that includes his full name and correct address and date of birth
- o User accounts for the suspect email accounts in his true name
- o Social media accounts linking the defendant to the suspect email accounts

## B. One Plus Phone, Model CPH2515, IMEI 869320063369971

- **A total of 275 videos of child pornography (Count Six – Possession of Child Pornography)** (equivalent to tens of thousands of images of child pornography. *See United States v. Haggerty*, 107 F.4th 175, 188 (3d Cir. 2024) (standard rate of 24 frames for every second in a video)). Download dates are between April 10 and August 9, 2024. The videos were stored in multiple locations on the phone, including the Downloads folder, a Movies folder, and a Kik folder within the Photos application. The videos primarily depict prepubescent minor girls (including infants and toddlers) engaged in oral or vaginal sex, or a lascivious display of their genitals. There were also numerous images and videos depicting sadistic and masochistic abuse, including the following three videos that were downloaded into his Movies folder:

  - o **3e0100ab-0cc3-45fd-8311-3f1f9202fadb.mp4** – A 58 second video depicting an infant baby while an adult male inserts his penis into the baby's mouth while holding the baby's head. The video was saved on the phone in a Movies folder on April 10, 2024.
  - o **d59dcc5a-462b-4b59-b188-fc8a5e1441fb.mp4** – A 1 minute, 19 second video depicting a nude, prepubescent minor girl, sitting on the floor while a dog licks her vagina. The video was saved on the phone in a Movies folder on April 10, 2024. This video had been previously reported in Cybertip 81992985.
  - o **012 (1).mp4** – A 4 minute, 51 second video depicting a nude, prepubescent minor girl, laying on a bed with yellow binding around her ankles, leg, and neck, while an adult male touches her vagina and ejaculates his penis on her face. The video was saved on the phone in a Movies folder on April 10, 2024.

- **A total of 338 cached files (321 images and 17 videos) of child pornography,** with dates between July 13 and August 9, 2024. Some of the child pornography depicted infants and toddlers, as well as sadistic/masochistic images that included children bound with rope, their mouths taped shut, and their limbs secured with chains. Most were cached from his Kik account, meaning that he had viewed these Kik videos on this device.

- **Videos of child pornography from the following Cybertips** were found on this phone:

  - 81992985 (Google), 102907640 (Google), 105701810 (Kik), 108165070 (Google), 170570287 (Kik), 182826400 (Kik), 188836902 (Kik), 189221845 (Kik), and 195485664 (Kik)**.**

  - Two videos associated with Cybertip 108165070 (Google) were found:

    - A 10-second video depicting a child approximately four years old nude and in the bathtub, being forced to perform oral sex on an adult male. This video was found in a folder entitled "Chat Vids" and was cached from the Kik Messenger application with a last written date of 7/21/24, meaning that the video was viewed on this date.
    - A 9-second video depicting the same content, stored within the Downloads folder.

- Phone number 267-232-8465 which was linked to Cybertips 129118425 ("Other" Cybertips – Facebook), 135499833 (Google), and 154411148 ("Other" Cybertips – WhatsApp).

- 12 different email accounts on the phone that were all linked to various Cybertips and child pornography images and videos, including the STUARTEDWARD01@GMAIL.COM and ANDRESP2155@GMAIL.COM accounts which the defendant identified for FBI agents as belonging to him.

- User Attribution linking the defendant to this phone, including:
  - Photos of his PA Driver's License
  - Credit cards
  - W2 forms from 2018 and 2023
  - Personal banking information
  - Autofill information stored on the phone that includes his full name and correct address and date of birth
  - User accounts for the suspect email accounts in his true name
  - Posted FaceBook images depicting the defendant's face
  - Multiple "selfie" style photos of the defendant
  - A screen-recording video of a user chatting with a girl on Kik. The video depicts the user navigating to Mega, browsing a folder of images depicting the defendant, selecting an image, and sending it. The image is followed by the message, "That's me."

## C. **Schok Volt SV55, IMEI 350216455353282**

- 28 cached images of child pornography, including images from Cybertips 102907640, 182826400, 189221845, and 196825399.

- At least 80 images of child erotica

- Phone number assigned 267-707-3953 (associated with Cybertips 129118425, 135499833, and 154411148)

- Autofill information stored on the phone that includes the defendant's full name and correct date of birth and email accounts associated with the Cybertips

- Other user attribution as was present on the other devices

### D. Motorola Moto G Stylus, IMEI 357690705996939

- **At least three videos of child pornography** that were stored in downloads on July 21 and August 9, 2024, depicting prepubescent girls being sexually abused through vaginal and anal penetration, displaying their genitals, and being forced to perform oral sex on an adult man. **(Count Six – Possession of Child Pornography)**

- **23 images of cached child pornography** with dates between July 18 and August 13, 2024.

- At least 12 email accounts, each of which is connected to at least one Cybertip

- Autofill information stored on the phone that includes his full name and correct date of birth

- The same user attribution as on the other devices

## III. SENTENCING CALCULATION

### A. Statutory Maximum Sentences

**Distribution of Child Pornography, 18 U.S.C. § 2252(a)(2), (b)(1) (Count One)**: A statutory maximum of 20 years' imprisonment, with a mandatory minimum of 5 years' imprisonment, a mandatory minimum 5 years' up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), forfeiture, a $100 special assessment, and, if found not to be indigent, up to $35,000 in additional assessments pursuant to 18 U.S.C. § 2259A(a)(2).

**Possession of Child Pornography, 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Count Six)**: A statutory maximum of 20 years' imprisonment[2], a mandatory minimum 5 years' up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), forfeiture, a $100 special assessment, and, if found not to be indigent, up to $17,000 in additional assessments pursuant to 18 U.S.C. § 2259A(a)(1).

**Total Maximum Penalty:** A statutory maximum of 40 years' imprisonment, with a mandatory minimum of 5 years' imprisonment, a mandatory minimum 5 years up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), forfeiture, a $200 special assessment, and, if found not to be indigent, up to $52,000 in additional assessments pursuant to 18 U.S.C. § 2259A.

As noted above, pursuant to 18 U.S.C. § 2253(a), the Court shall also order forfeiture of: (1) any visual depiction of child pornography or matter containing such depictions; (2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such violations; and (3) any property, real or personal, used or intended to be used to commit or to promote the violations charged in Counts One and Six, or any property traceable to such property, specifically:

1. Maxwest Nitro 8 Tablet, bearing IMEI 350513275849279;
2. One Plus Phone, Model CPH2515, bearing IMEI 869320063369971;
3. Schok Volt SV55, bearing IMEI 350216455353282; and
4. Motorola Moto G Stylus, bearing IMEI 357690705996939.

**B.**     **Effect of Revocation of Supervised Release**

Supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to two years on each of Counts One and Six. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original

---

2 The statutory maximum is elevated from 10 to 20 years' incarceration on Count Six because the defendant's collection included prepubescent minors under the age of 12 years. 18 U.S.C. § 2252(b)(2).

sentence, plus a substantial additional period, without credit for time already spent on supervised release.

## C.     Sexual Offender Registration Requirements

Upon conviction, the Sex Offender Registration and Notification Act ("SORNA"), which is a federal law, requires the defendant to register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. He must update his registrations not later than three business days after any change of name, residence, employment, or student status. In addition, failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

## D.     Sentencing Guidelines Calculation[3]

The United States Probation Office properly calculated the defendant's advisory Guideline range as follows: Counts One and Six were grouped as one continuing course of criminal conduct pursuant to U.S.S.G. § 3D1.2, and the distribution offense in Count One used to calculate the offense level as it yields a higher offense level. PSR ¶ 43. The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2). PSR ¶ 44. Two points are added because the child pornography depicted sexual abuse of minors under the age of 12 years pursuant to U.S.S.G. § 2G2.2(b)(2). PSR ¶ 45. Two additional points are added for the defendant's distribution of child pornography to other child sex offenders over the internet, pursuant to U.S.S.G. § 2G2.2(b)(3). PSR ¶ 46. Four points are added because the defendant possessed child pornography depicting the sadistic and masochistic abuse of children and other depictions of violence, pursuant to

---

3 The parties stipulated to the Guideline calculation in the Guilty Plea Agreement, and this same calculation was calculated by the United States Probation Office and reflected in the Presentence Report.

U.S.S.G. § 2G2.2(b)(4). PSR ¶ 47. Two points are added because the offense involved his use of multiple digital devices, pursuant to § 2G2.2(b)(6). PSR ¶ 48. Five additional points are added because the offense involved over 600 images pursuant to § 2G2.2(b)(7)(D). PSR ¶ 49. In total, the adjusted offense level is 37, and with the defendant's three-point decrease for his timely acceptance of responsibility, the final offense level is 34. PSR ¶ 57. The defendant has no criminal history, resulting in a Criminal History Category I classification. PSR ¶ 58-65. Accordingly, the sentencing Guidelines imprisonment range is 151 to 188 months. PSR ¶ 107.

## IV.   **ANALYSIS**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or

vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As detailed below, the Government believes that a consideration of the advisory Guidelines range and the Section 3553(a) factors support the sentence recommended by the parties. The Government further recommends that the Court impose a term of supervised release of 20 years, a fine, if any, to be determined by the Court, mandatory restitution, and forfeiture of the property used to facilitate the defendant's crime.

### A.    Consideration of the 3553(a) Factors

### 1. Nature and Circumstances of the Offense

*Every time someone views this trash he is once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress, and insecurity in a time when we need to feel safe and have a chance to heal/recover.*

*See* Exhibit A, excerpt from statement by child victim "Tara."

The defendant's crimes are heinous. He downloaded, possessed, viewed and distributed out over the internet thousands of images and videos of child pornography day after day for at least three years. Each image and video he gratified himself to was created from the horrific and violent rape and abuse of young girls to provide pornography for people like the defendant. By contributing to and sharing in the world of child pornography trading, he and others like him perpetuate the harm to the child victims depicted in these images by creating demand and fueling

this market, which leads to more sexual abuse of children and further production of images. Given the scope of the internet, their exploitation is ongoing and relentless. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008).

Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).* Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers," which results in a robust and growing market for child pornography and increased abuse of innocent children. *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

Each view, download and distribution of child pornography re-victimizes the children who were abused to create that particular piece of child pornography. In *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006), the Third Circuit upheld the defendant's

admittedly "harsh" sentence for distributing and possessing child pornography based, in large part, on the extreme harm to the children who are victims of sexual abuse.

> Where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years. Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children. … Furthermore, it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

(Internal citations omitted.)

Here, the images possessed by the defendant contained particularly horrific depictions of child sexual abuse, in that they involved sadomasochism and violence, including children who were bound with rope, their mouths taped shut and their limbs secured with chains. PSR ¶ 47. These children – some as young as infants - were horribly abused and raped by animals and adult men. Attached to this memorandum are letters from child victims (and their families) whose sexual abuse was recorded, and those recordings downloaded, possessed, and viewed by the defendant, and them distributed out over the internet by him to other child sex offenders. *See* Exhibits A through 0 (filed separately under seal). These letters describe the life-long pain and suffering that they endure because of the continued distribution and viewing of the recorded images of their abuse. Indeed, the mother of victim "Maria" explained how her daughter is exploited anew each and every time an image of her suffering is copied, traded, or sold:

> *Even though we have moved as far away as we felt we could—*
> *across the country—still this follows you…. I feel unsafe and*
> *worried for my daughter all the time…..She needs help. I ask you*
> *to do whatever you can to make these people stop trading her*

> *pictures, and to take them off the internet so my daughter can live*
> *a normal life and become all that she can be.*

*See* Exhibit B, statement of the mother of "Maria."

The victims' words—and the words of their families—detail the horrific trauma that they experience every time people like the defendant download, view and collect their images. There can be no doubt that the defendant's crimes are serious and warrant significant punishment.

### 2. History and Characteristics of the Defendant.

Consideration of this factor warrants the term of incarceration recommended by the parties. The defendant stands before this Court as a 45-year-old man who has done very little with his life except abuse and exploit children. He is single and has no children of his own. He obtained a very limited education, having dropped out of school in the 9th grade and never having obtained his GED.[4] PSR ¶ 93. He has limited employment on and off throughout his lifetime, with periods of unemployment where he was supported by his family and government assistance.[5] PSR ¶ 101. He never amassed any asset during his limited work history (other than the multiple digital devices he used to commit these child sexual crimes), and has lived in his parents' home, on their couch, his entire life. PSR ¶ 102.

The defendant also has a long history of drug abuse that includes his abuse of oxycodone, heroin, and cocaine for years, up until his arrest in this case. PSR ¶ 90-92. Indeed, in his

---

[4] Though the defendant has spent the last 15 months in custody, he's failed to take advantage of the programming and training available at the Federal Detention Center, having taken just four classes, totaling 21 hours, in subjects such as "Volleyball Official Training," "Feet," "Intro to Stress Management," and "Thinking on Your Feet." PSR ¶ 93. Moreover, though he claims to be "interested" in participating in substance abuse treatment "in the future," *see* PSR 92, he failed to take any programming to address his drug abuse, and did not avail himself of any therapeutic or psychiatric intervention during any of the 15 months while in custody.

[5] The defendant also failed to secure any work detail at any point during his stay at the FDC. PSR ¶ 96.

presentence interview the defendant attempted to blame his horrific child sexual crimes on his drug abuse, advising that "If I wasn't high, I would never have done it." PSR ¶ 92. This flies in the face of the evidence in this case, which shows that he created an elaborate child exploitation scheme that included dozens of different email addresses, his creation and use of multiple different names, and numerous online platforms, and multiple electronic devices, all of which he kept track of and used for years to obtain and distribute child pornography and communicate with other child sex offenders. He also engaged in extensive online chats with dozens of other people for years, at times using an online language translator to communicate with other users who didn't speak English in an effort to obtain child pornography. Thus, though he may have been abusing drugs during this same three year time period, the complicated methods the defendant employed to commit these crimes demonstrates that his thought process was functioning and that he was fully aware of the crimes he was committing. Regardless, drug abuse most certainly does not cause a person to become sexually attracted to a child.

Moreover, though he denies his sexual attraction to children, his collection of thousands and thousands of images depicting the youngest and most vulnerable of children shows otherwise. He amassed this enormous collection for more than three years, during a time when he was anonymous – in other words, he collected exactly what he wanted because he believed nobody was monitoring him. To continue to deny at this point the most basic aspect of his crimes – that he is sexually attracted to those children whose images he collected - in the face of such overwhelming evidence should cause this Court great concern and should be reflected in the term of incarceration and length of supervised release that is imposed.

### 3.   Just Punishment for the Offense

The sentence recommended to the Court by the parties reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense, as these factors relate to this defendant. *See* 18 U.S.C. § 3553(a)(2).

### 4.   Deterrence and Consistency in Sentencing

Deterrence is also one of the factors that calls for a significant sentence. The defendant himself needs to be deterred from sexually exploiting children in the future, which the parties believe can be accomplished through the recommended term of incarceration and by the strict conditions mandated by the supervised release term required for his child sex crimes. The recommended sentence comports with sentences imposed for similar crimes in this district and around the country.

### 5.   Other Considerations

The recommended sentence has already been adjusted "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner… ." 18 U.S.C. § 3553(a)(2)(D). Though he has demonstrated that he is capable of obtaining employment, there is a need for educational and vocational training to permit him a viable opportunity to engage in a career path. He will need drug treatment to be mandated as a part of supervised release. A special condition of supervised release for those convicted of child sex offenses also includes successful completion of sex offender treatment. The defendant's mental health treatment should also continue throughout his term of supervised release, all of which demonstrates the need for a significant term of supervised release.

## V.  **RESTITUTION**

Restitution is mandatory for these offenses in an amount that reflects the defendant's relative role in the losses for each victim, but which is not less than $3,000 per victim. 18 U.S.C. § 2259(b)(2)(B). The Supreme Court addressed the question of restitution for victims of this form of child exploitation where the criminal defendant did not produce the images, but possessed or distributed them. *Paroline v. United States*, 572 U.S. 434 (2014). The Court stated that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458. The Tenth Circuit has examined the process of determining restitution under these facts and noted that the Court in *Paroline* "acknowledged that setting a proper restitution award under this standard will involve both 'discretion and estimation,' *id.* at 462, and further, directed that a 'precise mathematical inquiry' would be ill-suited for the time being, *id.* at 459. Rather, a district court 'must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses.' *Id.* at 459." *United States v. Dunn*, 777 F.3d 1171, 1180 (10th Cir. 2015). Although the Supreme Court identified some factors that may be relevant in reaching such an estimation, they themselves are not precise. *See also United States v. Galan*, 804 F.3d 1287, 1289-90 (9th Cir. 2015) (defendant not responsible for losses attributable to original abuser; estimation of losses attributable to defendant who distributed images will be a mix of "discretion and estimation" and "precision is neither expected nor required."); *United States v. Dileo*, 58 F.Supp. 3d 239, 249 (E.D.N.Y. 2014) (noting that courts applying *Paroline* to a different victim, Vicky, resulted in awards in the $2000 to $4000 range in possession/distribution cases).

The Third Circuit, in a non-precedential decision, set out considerations for the district court in determining restitution:

> In *Paroline*, the Supreme Court stated that determining the proper amount of restitution "involves the use of discretion and sound judgment." *Id.* at 459, 134 S.Ct. 1710. The Supreme Court also articulated factors that a district court may follow when setting the amount of restitution. *Id.* at 459–60, 134 S.Ct. 1710. The factors include:
>
>> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.
>
> *Id.* at 460, 134 S.Ct. 1710. The "factors need not be converted into a rigid formula, especially if doing so would result in *trivial restitution orders*. They should rather serve *as rough guideposts* for determining an amount that fits the offense." *Id.* (emphasis added).

*United States v. Restitullo*, 796 F. App'x 76, 84 (3d Cir. 2019).

A number of the child victims in the defendant's collection have requested restitution, and the Government has provided supporting documentation for the requests to defense counsel. The parties will advise the Court should an agreement be reached prior to the sentencing hearing.

## VI.  **CONCLUSION**

For the reasons set forth above, the appropriate considerations of sentencing warrant the imposition of a sentence within the recommended range, to be followed by a period of

supervised release of 20 years with the special conditions for supervision of sex offenders, as recommended by the Probation Office.

Respectfully submitted,

DAVID METCALF
United States Attorney


 /s/ *Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

Dated: March 2, 2026.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by e-mail and ECF upon the following:

Maranna Meehan, Assistant Federal Defender
Maranna_Meehan@fd.org
*Counsel for Defendant*


 /s/ *Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

Dated: March 2, 2026.